# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 3539 | **DATE** | February 10, 2011 |
| **CASE TITLE** | *Stout v. United States* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the plaintiff's motion to vacate/for leave to amend [30-1] is entered and continued. The court directs the government to file an additional memorandum no later than March 1, 2011, addressing the questions detailed in the text of the order. To the extent that the government believes any other facts or legal principles will assist the court in ruling on the plaintiff's pending motions, it shall include a discussion of those as well. The court will order further briefing as necessary after it reviews the government's memorandum.

■[ For further details see text below.]

00:00

## STATEMENT

The court assumes familiarity with the facts of this case and its previous order. Briefly, the plaintiff, administrator of the estate of Ann Cuneo, filed suit against the United States challenging the disallowance of a refund claim for taxes that the plaintiff alleges were wrongfully paid by Cuneo's estate on assets that did not exist. Specifically, the plaintiff asserts that Cuneo was the victim of a fraudulent scheme by stockbroker Frank Gruttadauria, who caused Cuneo and her family to believe that she possessed assets worth several million dollars when in fact they were worth much less. Gruttadauria, in an alleged attempt to conceal his fraud, paid estate taxes (on the assets that apparently did not exist) to the IRS in the amount of $2,536,747.24.

The plaintiff, in July 2002, filed a protective refund claim in an attempt to recover the $2,536,747.24 that the estate has paid in taxes. In a letter with attachments dated June 9, 2008, the IRS notified counsel for the estate that it was disallowing $2,491,965 of the refund claim on the ground that it had been filed beyond the applicable statute of limitations. However, the letter and attachments indicated that $44,781.37 of the claim was being allowed as that amount had been paid within the applicable limitations period. The plaintiff filed suit on June 9, 2010, challenging the IRS' disallowance of the $2,491,965 refund claim. On October 1, 2010, this court granted the government's motion to dismiss the case on the ground that the plaintiff's refund claim was untimely. Specifically, the court rejected the plaintiff's argument that the statute of limitations should have been suspended because Gruttadauria, the errant stockbroker in charge of Cuneo's money, was "financially disabled." The court agreed with the government that the statutory provision allowing for a suspension of the limitations period when an individual is financially disabled, 26 U.S.C. § 6511(h)(1), applies only to the taxpayer herself, not third-party money managers like Gruttadauria. Accordingly, the court entered the October 1, 2010, order granting judgment in favor of the United States.

# STATEMENT

On December 13, 2010, the plaintiff filed a motion to vacate the October 1, 2010, order pursuant to Fed. R. Civ. P. 60. The plaintiff's motion to vacate is far from clear; however, it appears that the plaintiff seeks reconsideration of the October 1, 2010, order and for leave to amend the complaint based on events that took place after the October 1, 2010, order was entered. The issue revolves around when the IRS issued a final determination regarding whether it would allow or disallow the plaintiff's refund claim.

<u>IRS Final Determination</u>. Specifically, in late October 2010, after judgment had been entered in this case, the IRS informed counsel for the government that the IRS had ultimately determined to disallow the refund claim in full, including the $44,781 amount (despite its June 9, 2008, allowing the $44,871.37 refund claim amount). Counsel for the government and plaintiff's counsel then discussed the issue over the phone. On November 3, 2010, counsel for the government wrote the plaintiff a letter stating that its answer to paragraph 16 of the complaint in this case was misleading in light of the most recent developments by the IRS.

Paragraph 16 of the complaint alleged as follows:

> 16. By letter from the IRS dated June 9, 2008, the IRS disallowed Plaintiff's Amended Refund Claim on the basis that it was not timely filed. However, the IRS did permit a refund in the amount of $44781.37 based upon other changes to the Form 706. A true and correct copy of the IRS letter is hereby attached as Exhibit "E".

The government's answer to paragraph 16 stated as follows:

> **ANSWER**: The United States admits the allegations of paragraph 16, except that the IRS found that the refund claim was timely filed, but only for the purposes of 26 U.S.C. § 6511(b)(1)(B) and therefore, agreed to refund all tax payments made within 2 years of the refund claim.

In her November 3, 2010, letter to the plaintiff's counsel, counsel for the government stated in part:

> In follow-up to our phone conversation last month, I am writing to let you know that we have elected not to move to amend our answer in the above-referenced matter. However, you should be aware that our answer to paragraph 16 . . . is somewhat misleading in light of the fact that the IRS now intends to issue a final determination denying the estate's refund claim in full, including the $44,781.37 which was initially provisionally allowed by the IRS, and it [sic] was subject to the IRS's final determination.

Government's Response to Motion to Vacate, Exh. 7, Dkt. #37-7.

In a letter dated November 12, 2010, the IRS formally notified the plaintiff that it was denying the entire amount of the refund claim:

> We are sorry, but we cannot allow the above claim [in the amount of $2,536,747.00] for an adjustment to your tax for the following reason: The July 21, 2002, claim for refund was not filed within three years from the time Form 706 was filed. As for amounts that may have been paid within 2 years of your claim refund [$44,871.37], it has not been established that the value of the gross estate differs from the amount returned on Form 706.

> Our decision is based on provisions of the Internal Revenue laws and regulations. This letter is your legal notice that your claim is fully disallowed.

November 12, 2010, letter from IRS Appeals Office, attached as Exh. 8 to government's response, Dkt. #34-7. The letter goes on to inform the administrator of Cuneo's estate that he has two years from the mailing date of the letter, November 12, 2010, to bring suit in district court.

Plaintiff's November 4, 2010, Amendment to Refund Claim. The plaintiff's attorney states that, prior to receiving the November 12, 2010, final determination letter from the IRS, but after being notified telephonically by the government in late October that the claim was being disallowed in full, he filed on November 4, 2010, an amendment to the estate's request for refund. According to the plaintiff's attorney, he set forth in the November 4, 2010, amendment his theory that Gruttadauria was "financially disabled" and therefore, the limitations period for the refund claim should have been suspended. The plaintiff's attorney seems to argue in his motion to vacate/motion for leave to amend that his "financial disability" argument was never previously presented to nor addressed by the IRS, and that the IRS now has an obligation to address it given that he included the argument in his November 4, 2010, amendment.

The government makes several arguments why the motion to vacate and the motion for leave to amend should be denied. However, even before addressing the merits of the plaintiff's claim, the set of circumstances described above raises several preliminary issues as to the entire refund claim amount and this case. First, if the entire refund claim was not finally adjudicated until November 12, 2010, then had the plaintiff fully exhausted his remedies prior to filing the instant lawsuit in June 2010? If not, did this court have jurisdiction to adjudicate the case as to any amount, including the $2,491,965? Also, did the IRS consider the plaintiff's November 4, 2010, amendment setting forth the "financial disability" argument? If not, must it consider the issue before this court does?

Given these questions and the court's concerns regarding its jurisdiction to consider the merits of the case prior to the issuance of what the government characterizes as a final determination letter dated November 12, 2010, the court enters and continues the plaintiff's motion to vacate the October 1, 2010, order and motion for leave to amend. The court directs the government to file an additional memorandum no later than March 1, 2011, addressing the questions detailed above. To the extent that the government believes any other facts or legal principles will assist the court in ruling on the plaintiff's pending motions, it shall include a discussion of those as well. The court will order further briefing as necessary after it reviews the government's memorandum.

RH/p